# United States Court of Appeals
## For the First Circuit

No. 24-1745

ODETTE LÓPEZ COLLAZO,

Plaintiff, Appellant,

MARITZA FONT ORTIZ; VERANIA CRESPO CRUZ,

Plaintiffs,

v.

WILFREDO RUIZ-FELICIANO; LUIS A. VÉLEZ; NANCY LABOY;
MUNICIPALITY OF MARICAO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Israel Roldán-González for appellant.
Jorge Martínez-Luciano, with whom Emil J. Rodríguez-Escudero
and M.L. & R.E. Law Firm were on brief, for appellees.

June 30, 2026

**GELPÍ**, **Circuit Judge**.  In 2020, the Popular Democratic Party ("PDP") candidate defeated the New Progressive Party ("NPP") incumbent in the Maricao, Puerto Rico, mayoral election.  Following the change in administration, the new PDP mayor, Wilfredo Ruiz-Feliciano ("Ruiz-Feliciano"), did not reappoint NPP member Odette López Collazo ("López Collazo") to the position of Internal Auditor -- a position she had held under the NPP mayor since 1994.  As relevant here, López Collazo filed suit against Ruiz-Feliciano, claiming that his decision was based solely on her affiliation with the NPP and constituted political discrimination in violation of the First and Fourteenth Amendments.  The district court rejected her arguments and granted summary judgment for Ruiz-Feliciano, concluding that First Amendment protections against political discrimination did not apply to a decision not to hire.  And that because the Internal Auditor position was classified as a trust position under Puerto Rico law, the new mayor could hire and fire at will.  We now **vacate** and **remand**.

## I. Background

In reviewing the district court's decision to grant summary judgment, we recite the facts in the light most favorable to López Collazo and draw all reasonable inferences in her favor.  See Cruz-Cedeño v. Vega-Moral, 150 F.4th 1, 3 (1st Cir. 2025).

López Collazo has always been affiliated with the NPP, though the extent of her political activity has been limited to voting in primary elections, general elections, and plebiscites. She began working for the Municipality of Maricao (the "Municipality") in 1993, which is when former NPP Mayor Gilberto Pérez-Valentín ("Pérez-Valentín") took office. The following year, Pérez-Valentín appointed her to the position of Internal Auditor -- at that time, a trust position[1] under Puerto Rico law.[2] López Collazo was reappointed to that position every election year and held it until 2020. That year, PDP candidate Ruiz-Feliciano won the mayoral election, and López Collazo's appointment expired. Ruiz-Feliciano took office in January 2021.

With the Internal Auditor position vacant, and Ruiz-Feliciano holding the sole authority to fill it, López Collazo offered her services to the new mayor. He declined. As López Collazo recounted in her deposition:

> I spoke with the mayor. I told him that I was available, because by that date he didn't have an [I]nternal [A]uditor. He indicated to me that he needed somebody worth of his trust that belonged to the governing party at that

---

[1] A "trust" position is an appointed role based on political or personal confidence, as distinguished from career positions filled through merit-based civil-service processes.

[2] As of October 14, 2022, Puerto Rico Act No. 92-2022 proscribes the position of Internal Auditor from being a trust position. Puerto Rico Laws Ann. Tit. 21, § 7154.

point, which was the [PDP].  I mentioned to him I needed my liquidation of sick leave and vacation.  A month had gone by already and still those liquidations had not been performed for me.

**B.**

López Collazo sued Ruiz-Feliciano, Finance Director Luis Vélez, and Accounting Clerk Nancy Laboy, in their official and personal capacities, as well as the Municipality (collectively, "Defendants") under 42 U.S.C. § 1983.  She claimed that Ruiz-Feliciano discriminated against her by declining to renew her appointment as Internal Auditor solely because of her NPP affiliation, in violation of the First and Fourteenth Amendments.  She further claimed that Vélez and Laboy did not pay out her vacation and sick leave balances "to discriminate and harass her because [of] her political affiliation."  Two other plaintiffs affiliated with the NPP -- Maritza Font Ortiz and Verania Crespo Cruz -- joined the suit, asserting their own political discrimination claims based on alleged reductions in workload and harassment.  Their claims are not before us now.

Following discovery, Defendants moved for summary judgment on all of López Collazo's claims.  López Collazo conceded to summary judgment for her claims against Laboy but otherwise opposed the motion.  The court granted the Defendants' motion as to Laboy and Ruiz-Feliciano but left López Collazo's claims against Vélez and the Municipality unaddressed.

- 4 -

López Collazo moved for reconsideration of the grant of summary judgment for Ruiz-Feliciano, but the district court denied her motion. She then sought entry of a partial final judgment under Federal Rule of Civil Procedure 54(b) so that she could appeal the summary judgment rulings while the remaining plaintiffs' claims were litigated in district court. The court granted her request and she timely appealed.

After docketing the appeal, we retained jurisdiction but remanded and directed the district court to provide a statement of reasons for the Rule 54(b) certification. See, e.g., Quinn v. City of Bos., 325 F.3d 18, 26 (1st Cir. 2003) ("[I]f a district court wishes to enter a partial final judgment on the ground that there is no just reason for delay, it should not only make that explicit determination but should also make specific findings and set forth its reasoning."). The district court then explained that López Collazo's claims against Laboy and Ruiz-Feliciano were fully resolved and were factually and legally distinct from those of the remaining plaintiffs. But it did not address how her resolved claims against Laboy and Ruiz-Feliciano sufficiently differed from her pending claims against the remaining defendants -- Vélez and the Municipality. Cf. Credit Francais Int'l, S.A. v. Bio-Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996) (noting that, in the Rule 54(b) context, district courts must carefully consider the interrelationship between dismissed and

pending claims to prevent piecemeal appeals with common issues of law or fact).

Hence, we entered a second order directing the parties to address whether the district court had sufficiently complied with Rule 54(b). At argument, López Collazo represented that she would move to dismiss her pending claims to cure any finality issues. She did so, and the district court granted her motion to dismiss with prejudice. The sole issue before us now is López Collazo's claim that Ruiz-Feliciano violated her First and Fourteenth Amendment rights by refusing to hire her on account of her political affiliation.

## II. Discussion

We review the district court's grant of summary judgment de novo. U.S. Fire Ins. v. Peterson's Oil Serv., Inc., 155 F.4th 22, 28 (1st Cir. 2025). We will affirm only "if there are no genuine disputes of material fact and the district court's conclusions are correct as a matter of law." Id. (citing Lionbridge Techs., LLC v. Valley Forge Ins., 53 F.4th 711, 718 (1st Cir. 2022)).

## A.

First, we lay out the legal principles at play in this appeal. "The First Amendment protects public employees from adverse action due to their political affiliation, unless political affiliation is an appropriate requirement for the

- 6 -

position." Méndez-Aponte v. Bonilla, 645 F.3d 60, 64 (1st Cir. 2011). When a government employer violates that First Amendment right, 42 U.S.C. § 1983 provides the vehicle through which an aggrieved individual may seek redress. Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). To prevail on a § 1983 claim for political discrimination, a plaintiff must show that (1) "the plaintiff and defendant have opposing political affiliations," (2) "the defendant is aware of the plaintiff's affiliation," (3) "an adverse employment action occurred," and (4) "political affiliation was a substantial or motivating factor for the adverse employment action." Méndez-Aponte, 645 F.3d at 64-65 (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)).

After a plaintiff establishes a political discrimination claim, the burden shifts to the defendant to "establish either a nondiscriminatory reason for the challenged action or that plaintiff held a '[trust] position,' for which party affiliation constitutes 'an appropriate requirement for the effective performance of the public office involved.'" Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 131 (1st Cir. 2005) (first citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); and then quoting Branti v. Finkel, 445 U.S. 507, 518 (1980)). Only the latter defense is at issue here.

With these principles in mind, we turn to the dispute in this case. The district court granted summary judgment for Ruiz-Feliciano primarily on the ground that López Collazo failed to establish the third element of a political discrimination claim -- that Ruiz-Feliciano's refusal to hire her constituted an "adverse employment action." In its reasoning, the court further suggested that Ruiz-Feliciano was entitled to consider political affiliation in his decision because the Internal Auditor position was a trust position under Puerto Rico law and, therefore, the position is of free selection and removal. We review each ground in turn, ultimately reaching a conclusion contrary to that of the district court.

**1.**

In deciding that López Collazo failed to establish the third element of a political discrimination claim, the district court reasoned that a failure to hire could not constitute an adverse employment action under the First Amendment.[3] Our precedent, however, dictates otherwise.

Under the First Amendment, an "'[a]dverse employment action' includes . . . a government entity's refusal to . . . hire

---

[3] The district court relied on Title VII doctrine to reach its conclusion. But the First Amendment's adverse-action standard is broader than that under Title VII, see, e.g., Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (citing Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004)), and is the appropriate framework here.

an employee." Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 79 (1990)). The First Amendment's political discrimination bar also protects "those who fail to receive a new appointment" to a position they previously held. Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125, 128 (1st Cir. 1987) ("[The First Amendment] do[es] not distinguish between employees discharged . . . and those who fail to receive a new appointment."); see also Peterson v. Dean, 777 F.3d 334, 341 n.2 (6th Cir. 2015) (citing Rutan, 497 U.S. at 72) ("This principle extends . . . to the failure to reappoint an employee upon the expiration of a term of office . . . ."). After all, any other result would seriously undermine the constitutional protections against political discrimination in public employment "because local governments could pass laws providing that the jobs of nonpolicymaking employees extend only from election to election, and that the new officeholder is entitled to make all new appointments." Id.

Here, López Collazo introduced evidence that she had previously served as Internal Auditor, that her appointment expired, and that she affirmatively offered her services to the new mayor -- who denied her appointment because of her political affiliation with the NPP. Whether characterized as a failure to hire or a failure to reappoint, her claim falls within the scope

of First Amendment protections.[4]  Thus, the district court's conclusion that she had not established an adverse employment action was legally flawed.

## 2.

We turn to the district court's suggestion that Ruiz-Feliciano could permissibly consider political affiliation in appointing the Internal Auditor.  This conclusion relied solely on Puerto Rico law's classification of the Internal Auditor as a "trust" position.  That too was error.

Whether an individual's political affiliation is an appropriate requirement for a particular public office is not resolved by merely looking to the position's legislative classification.  It is a legal question for the court, Méndez-Aponte 645 F.3d at 65, resolved through a two-step inquiry, Galloza v. Foy, 389 F.3d 26, 29-30 (1st Cir. 2004).  First, the court should ask "whether the governmental unit decides 'issues where there is room for political disagreement on goals or their implementation.'"  Ruiz-Casillas, 415 F.3d at 132 (quoting Jiménez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 1986) (en banc)).  If it does, the analysis proceeds to the second step,

---

[4] Ruiz-Feliciano attacks a strawman when he argues that, while he was allowed to appoint López Collazo, "he was under no obligation to do so."  López Collazo does not claim she was entitled to the position -- she claims that Ruiz-Feliciano could not refuse to appoint her solely because of her political affiliation with the NPP.

which "examine[s] the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Jiménez Fuentes, 807 F.2d at 242. Because this inquiry is fact-specific, the court must "weigh all relevant factors and make a common sense judgment in light of the fundamental purpose to be served." Id.

Relevant factors typically include the plaintiff's actual job description -- "the best, and sometimes [a] dispositive, source for determining the position's inherent functions." O'Connell v. Marrero-Recio, 724 F.3d 117, 127 (1st Cir. 2013) (alteration in original) (quoting Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 62 (1st Cir. 1997)). Also pertinent are "the extent to which the position involves supervision and control over others" and "the influence of the position over programs and policy initiatives." Galloza, 389 F.3d at 29. Legislative classification of the position "may be entitled to some weight," but is not dispositive. See id. The district court did not undertake that analysis in this case and instead premised the determination that López Collazo could be dismissed because of political affiliation solely on the legislative classification of the Internal Auditor position as a trust position. Under our

precedent, this constitutes error.  We thus turn to that analysis now.

Step one is easily satisfied here -- a municipality's functions obviously involve decisionmaking on issues where there is room for political disagreement on goals or their implementation.  This case therefore turns on the second step, which, as we noted, entails a fact-specific inquiry.

It is not the first time we have considered whether the position of municipal Internal Auditor in Puerto Rico is one for which political affiliation is an appropriate consideration.  In Cordero v. De Jesus-Mendez, 867 F.2d 1, 17-18 (1st Cir. 1989), we examined the Internal Auditor position of another Puerto Rican municipality.  The duties there included inspecting financial records, verifying compliance, reporting irregularities, auditing past transactions, and submitting reports to the mayor on the results of audits.[5]  Id. at 17.  We held that these duties were all "technical" functions that entailed no meaningful discretion or policymaking judgment.  Id.; see also Cruz-Baez v. Negron-Irizarry, 360 F. Supp. 2d 326, 359 & n.17 (D.P.R. 2005) (concluding that the Internal Auditor of the municipality of San Germán with identical responsibilities "merely enforces procedural

_____

[5] The Internal Auditor's job description was not admitted into evidence in Cordero, so we relied on the plaintiff's direct testimony about his responsibilities when deciding that case.  867 F.2d at 17.

- 12 -

rules, ordinances, laws, and resolutions enacted by the [Comptroller] of Puerto Rico, the Municipal Assembly, and/or Legislature."). We reasoned that the auditor could not correct errors, direct the functions of any administrative unit, or set the municipality's fiscal priorities; those responsibilities belonged to the Finance Director, whom we recognized as the relevant political appointee. Id. at 17-18. Thus, we stated in Cordero that, despite that position having an advisory function, it was "a technocrat, as the title implies, and nothing more." Cordero, 867 F.2d at 17-18. Ruiz-Feliciano does not identify any features of the Internal Auditor position that López Collazo held that are distinctive of the position at issue in Cordero. Thus, we see no basis for affirming on a ground independent of the one on which the district court relied.

## III. Conclusion

For these reasons, the district court's order granting summary judgment is **vacated**, and the case is **remanded** for further proceedings consistent with this opinion.